IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JOHN POTTLE,                                                      CV 04-600-CO

               Plaintiff,                      FINDINGS AND
                                                                 RECOMMENDATION

      v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

               Defendant.


COONEY, Magistrate Judge:

### BACKGROUND

Plaintiff, John R. Pottle (Pottle), brings this action for judicial review of a final decision of

the Commissioner of Social Security denying his application for supplemental security income

disability benefits (SSI) under Title XVI of the Social Security Act (the Act). 42 U.S.C. §§ 401-33, 1381-83f. This court has jurisdiction under 42 U.S.C. § 405(g).

Pottle was 44 years old at the time of the ALJ's decision denying him benefits. He was 41 years old on the date he allegedly became disabled- March 6, 2001. He has a high school education and past work as a car cleaner, house cleaner, gas station attendant, janitor, fast food worker, asbestos remover, construction worker, shipping and receiving worker, and sanitation worker/snow plower. Tr. 107, 131, 374, 389-90.

Pottle alleges he became disabled on March 6, 2001, due to back pain, depression, diabetes, and emphysema. Plaintiff was found to be disabled on January 2, 2003, after an ALJ determined that he had an affective disorder that met listed impairment 12.04. Tr. 29-38. However, after reviewing this decision *sua sponte*, the Appeals Council reversed, finding it lacked substantial evidentiary support. Thereafter, a second hearing was held, and on January 12, 2004, Pottle was found not disabled. Tr. 12-25.

On appeal to this court, Pottle contends the ALJ erred by (1) improperly rejecting the opinion of James Bryan, Ph.D. that Pottle suffers from a personality disorder ; (2) improperly rejecting Christopher Hill's opinion about Pottle's social limitations; (3) failing to find Pottle's alleged personality disorder and somatoform disorder were severe impairments; (4) failing to find Pottle's mental impairments equivalent to a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, section 12.05(c); and, (5) relying on vocational expert testimony elicited with an incomplete hypothetical question.

The Commissioner denies each of Pottle's claims, and argues the ALJ's decision is reasonable, and supported by substantial evidence.

For the reasons set forth below, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

## STANDARD OF REVIEW

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its

judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at step one the ALJ found Pottle had not engaged in substantial gainful activity since his alleged disability onset date. Tr. 17, 23; see 20 C.F.R. § 416.920(b).

At step two, the ALJ found Pottle had the following severe impairments: lumbar degenerative changes with mild bilateral L5 foramina stenosis, status post laminectomy; asthma; alcohol dependence in remission; borderline intellectual functioning; and depression. Tr. 19, 24; see 20 C.F.R. § 416.920(c).

At step three, the ALJ found that Pottle's impairments did not meet or equal the requirements of a listed impairment. Tr. 19, 24; see 20 C.F.R. § 416.920(d). The criteria for these listed impairments, also called Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

The ALJ assessed Pottle with the residual functional capacity (RFC) to perform light work, with the additional limitations of: the need for a sit/stand option; only occasional bending, crawling, and stair climbing; no concentrated exposure to dusts, fumes, odors, and other respiratory irritants; no public contact; only limited contact with co-workers and supervisors; and

only simple tasks involving up to three steps.  Tr. 22, 24; see 20 C.F.R. § 416.945(a); see also

Social Security Ruling (SSR) 83-10.

At step four, the ALJ found that Pottle was not able to perform his past relevant work.

Tr. 22, 24; see 20 C.F.R. § 416.920(e).

At step five, however, the ALJ found Pottle could perform other work existing in

significant numbers in the national economy, such as bench assembler, packer, and cleaner

polisher.  Tr. 24-25; see 20 C.F.R. § 416.920(f).

## DISCUSSION

I.      **The ALJ properly evaluated the medical evidence.**

A.      **Personality Disorder**

On July 7, 2003, Dr. Bryan conducted a psychological evaluation on Pottle, requested by

Pottle's attorney.  Tr. 324.  Pottle contends the ALJ improperly rejected Dr. Bryan's diagnosis of

a personality disorder, not otherwise specified, with paranoid and borderline features.  Tr. 333.

The ALJ concluded that this diagnosis was not supported by Dr. Byan's own testing, or by the

record as a whole.  Tr. 21.

The Minnesota Multiphasic Personality Inventory 2 (MMPI-2) profile performed by Dr.

Bryan showed that Pottle comprehended questions, consistently and deliberately reported his

answers, and engaged in "extreme over-reporting of his symptomology."  Tr. 332.  Dr. Bryan also

noted that Pottle "seemed to have embellished some examples of his asaultiveness,[sic] in

comparison to those described in his records.[1]  He presented these in a determined and somewhat

---

[1] For instance, Pottle told Dr. Bryan he knocked a man against a tree who attempted to fondle him at a MAX stop, while in other records Pottle reported elbowing the man and walking away.  Tr. 325.

boastful tone." Tr. 331. Yet, Dr. Bryan concluded that while Pottle "emphasized his symptoms" there was "no indication of deliberate exaggeration." Tr. 330-31.

Pottle contends his scores on other validity indicators, such as the Test of Memory and Malingering (TOMM), weigh against the conclusion that he intentionally exaggerated his symptoms to Dr. Bryan. Tr. 331. However, the Commissioner contends the TOMM does not test for malingering with respect to personality features; rather, it measures whether an individual is falsifying symptoms of memory impairment. The record is unclear in this regard. Dr. Bryan's report indicates only that the TOMM "was administered as a measure of response validity." Id.

The ALJ also found that Dr. Bryan's diagnosis was inconsistent with Pottle's other diagnosis in the record. For instance, Susan Snow, M.D., began treating Pottle in October, 2001, and noted Pottle's report that she was the first psychiatrist he had ever seen. Tr. 251. Pottle had attended three sessions with a therapist in Dr. Snow's office, but when he was asked to complete anger management paperwork he demanded to see a psychiatrist for a prescription instead. Tr. 251. Dr. Snow diagnosed Pottle with the following: rule out bipolar II disorder, rule out major depressive disorder, post traumatic stress disorder, history of alcohol abuse, current cannabis abuse, and rule out antisocial personality disorder. Tr. 252.

In his report, Dr. Bryan stated that the diagnosis of mixed personality disorder was "well established, in a pattern consistent with and identified by Dr. Cogburn." Tr. 333. However, like Dr. Snow, Dr. Cogburn actually diagnosed rule out personality disorder as well. Tr. 287. Dr. Cogburn evaluated Pottle in April, 2002. Tr. 283-88. On the Cognistat Neurobehavioral Cognitive Status Examination, Pottle showed mild to moderate impairment in calculation and abstract reasoning, but his scores were otherwise normal. Tr. 287. Pottle's full scale I.Q. was 74,

placing him in the borderline to low average range.  Id.  On the Personality Assessment Inventory, which measures testing validity, Pottle's scores reflected "a consistent tendency to portray himself in an especially negative and pathological manner."  Id.  Dr. Cogburn indicated that "[t]his pattern can be associated with deliberate malingering or with an extreme cry for help."  Either way, the resulting clinical profile "is unlikely to provide accurate information about Mr. Pottle's current status and functioning."  Id.

In his pleading, Pottle emphasizes that Dr. Cogburn did not conclude one way or the other, whether Pottle's inaccurate profile was due to deliberate malingering.  Pottle also points out that Dr. Cogburn did not review other records like Dr. Bryan did, nor did she conduct an MMPI-2 test. Pottle's argument, though valid, is irrelevant to the question of whether a diagnosis based on invalid test results is reliable.  The ALJ determined that Dr. Bryan's diagnosis was inconsistent with his own clinical findings together with that of others.  Whether this was because Pottle deliberately exaggerated is unimportant to this inquiry.

Pottle's tendency toward malingering, however, is relevant to his credibility.  The ALJ found Pottle's subjective reporting was not reliable.  Tr. 20.  Pottle does not dispute this finding.  However, the ALJ's rejection of Dr. Bryan's opinion was based, in part, on the finding that Dr. Bryan seemed to credit Pottle's self-reports, despite noting Pottle's tendency to exaggerate.

Pottle's tendency toward exaggeration was also observed by other physicians.  Erik Penner, M.D., saw Pottle in June, 2001, for lumbosacral pain. Tr. 218.  Dr. Penner found Pottle to be "very melodramatic in the exam."  Id.  He questioned Pottle's effort, and noted inconsistencies in ambulation and strength testing, and found Pottle's pain complaints to be disproportionate to the clinical findings.  Tr. 219, 221.  Joe Wood, Psy.D., who evaluated Pottle

in September, 2001, also noted that Pottle "seemed to exaggerate his symptoms rating his depression at 10." Tr. 20, 249.

The relative weight given to the opinion of a physician depends on the physician's opportunity to observe and to get to know the patient as an individual. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). The opinion of a treating physician deserves more weight than that of an examining physician, and a non-examining physician's opinion receives the least weight. Id.; see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). The ALJ must provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting the opinion of a claimant's physician. Lester, 81 F.3d at 830.

In the instant case, the ALJ needed to provide specific and legitimate reasons to discount Dr. Bryan's opinion, which was contradicted by other physicians, some of whom had a treating relationship with Pottle. The ALJ's stated reasons were threefold: (1) Dr. Bryan credited Pottle's subjective reports despite his own findings that Pottle embellished stories and exhibited a boastful affect; (2) Pottle's MMPI profile was invalid; and (3) a diagnosis of personality disorder was not supported by Pottle's medical record as a whole. Tr. 19, 21. I find these to be specific and legitimate reasons. Accordingly, I recommend upholding the ALJ's assessment of Dr. Bryan's opinion.

### B. Somatoform Disorder

Pottle argues the ALJ erred, at step two of the sequential evaluation, by not finding "severe" Pottle's alleged personality disorder, and somatoform disorder. According to Pottle,"the record contains ample evidence of [personality disorder and somatoform disorder] affecting [his] ability to engage in work-like activities such as sitting, lifting, concentrating and interacting with

others. . .".  Having already found the ALJ properly discredited Dr. Bryan's diagnosis of personality disorder, I turn to Pottle's argument that he suffers from "severe" somatoform disorder.

Under the regulations, a "severe" impairment is one that causes significant limitation in a claimant's physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 416.920(c), 416.921(a).  An impairment is not severe if it has no more than a minimal effect on an individual's ability to do basic work activities.  See SSR 85-28.

Dr. Bryan diagnosed Pottle with a pain disorder, associated with psychological factors and a general medical condition.  Tr. 333.  This is also referred to as a somatoform disorder.  The Commissioner correctly points out that Dr. Bryan  was the only one out of the seven physicians and psychologist's in the record to make this diagnosis.  However, even if the ALJ had not properly discredited Dr. Bryan's opinion (see above), the mere diagnosis of an impairment would not be sufficient to establish that Pottle suffers from work-related limitations as a result of somatoform disorder.  See Mathews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

Pottle refers the court to a number of records (Tr. 246, 251-52, 275, 277, 283, 287, 332) that allegedly show that his impairments effect his ability to engage in work-like activities.  Yet, other than Dr. Bryan, the physicians and psychologists who wrote these notes did not conclude that Pottle's condition merited a diagnosis.  Moreover, even assuming Pottle's alleged pain disorder did impose limitations on his activities, Pottle has failed to show it had more than a minimal effect on his ability to do basic work activities.  See SSR 85-28 (examples of basic work activities are walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling).

## C. Mental Retardation

Pottle argues his impairments, in combination, are equivalent to listed impairment 12.05(c), or Mental Retardation. See 20 C.F.R. Part 404, Subpart P, Appendix 1. In order to be found disabled under this listing, a claimant must show (1) significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (i.e. before age 22); (2) a valid, verbal, performance, or full scale IQ of 60 though 70; and (3) physical or other mental impairment imposing an additional and significant work-related limitation of function. Id.

The ALJ noted that Pottle's IQ met the listing requirement but beyond that, the record lacked evidence of significant work-related limitations attributable to a mental impairment, or deficits in adaptive functioning manifested during the developmental period. Tr. 19. Further, none of Pottle's physician's concluded that his impairments were equivalent to a listed impairment. Tr. 19.

Pottle testified that even though he graduated from high school on time, he received Ds and Fs in school and he felt that he was pushed through the system. Tr. 385-86. He argues that this fact, in addition to his work history, which includes unskilled and semi-skilled jobs only, evidence "deficits in adaptive functioning" sufficient to meet Listing 12.05(c).[2] I disagree, as I find Pottle's own testimony, which was generally discredited by the ALJ, cannot serve as evidence that his alleged deficits in adaptive functioning manifested before age 22. More is needed to

---

[2] Pottle also argues, in the alternative, that he meets Listings 12.07 (somatoform disorder) and 12.08 (personality disorder). Having affirmed the ALJ's rejection of these diagnosis, I need not address this argument.

satisfy this burden, such as documentation from school officials. Accordingly, I find the ALJ

properly determined that Pottle's impairments do not meet or equal a listed impairment.

**II.     The ALJ properly evaluated lay witness testimony.**

Beginning in May, 2002, Christopher Hill counseled Pottle on nine separate occasions.

Mr. Hill is not a doctor; he is a self-described "mental health professional" working toward

becoming a licensed marital/ family therapist. Tr. 348. Mr. Hill testified that Pottle had mild

limitations in activities of daily living, moderate to severe limitations in social functioning, and

moderate limitations in concentration, persistence, and pace. Tr. 351-54. He also said Pottle had

experienced four episodes of decompensation, and opined that Pottle is disabled. Tr. 356-59.

Pottle acknowledges that the ALJ was correct to find that the record does not support a

finding of any episodes of decompensation of extended duration. Tr. 21. However, Pottle argues

the ALJ "ignored" Mr. Hill's opinion that he suffers from moderate to severe social functioning.

Tr. 353. Indeed, the ALJ did not specifically mention Mr. Hill's name in his written opinion.

However, it is clear from his findings that the ALJ did not altogether ignore it, either. The ALJ

found that Pottle had moderate difficulties in maintaining social functioning, and mild difficulties

maintaining concentration, persistence or pace. Tr. 19. These findings partially credited Mr.

Hill's opinion, though they reflect the more persuasive opinions of physicians like Dr. Cogburn,

who opined that Pottle's angry and aggressive outbursts were within Pottle's control, and were

employed as "one of his frequently used strategies for managing the challenges of everyday life."

Tr. 21, 287.

Case law clearly establishes that the ALJ must account for lay witness testimony and

provide germane reasons for rejecting it. See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

11 - FINDINGS AND RECOMMENDATION

However, the ALJ is not required to discuss non-probative evidence. See Vincent ex. rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). In this case, I find the ALJ did not reject Mr. Hill's testimony, but found it to be non-probative of disability, in light of the other, more persuasive record evidence. Therefore, I find any error that may have resulted from the ALJ's failure to mention Mr. Hill, specifically, was harmless.

**III.     The ALJ's step five determination was based on substantial evidence.**

According to Pottle the ALJ erred by omitting limitations resulting from his alleged personality and somatoform disorders in the hypothetical question posed to the vocational expert (VE). Pottle does not specify what limitations the ALJ should have included, however.

In his hypothetical question, the ALJ asked the VE to consider an individual the same age as Pottle, with the same educational and work background. Tr. 391. He limited this individual to lifting and carrying 20 pounds occasionally and ten pounds frequently; the need to sit or stand at will; only occasional use of stairs and only occasional bending or crouching; and no concentrated exposure to dust, fumes and gases. The ALJ further specified that the hypothetical individual should be limited to simple, one-two-three-step work, and should not come into contact with the public, and with co-workers and supervisors only on a limited basis. Id.

I find this hypothetical question to be sufficient. The ALJ properly credited the limitations that were supported by substantial evidence in the record, and discredited limitations alleged, but not supported by the record. See Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001)(the ALJ is free to accept or reject restrictions that are not supported by substantial evidence).

In response, the VE testified that this hypothetical individual would be capable of working as a bench assembler, a packer, and a cleaner polisher. Tr. 23, 392. The VE stated that these jobs existed in significant numbers in the national economy. Tr. 389, 392. The ALJ properly adopted the VE's testimony, and concluded that Pottle was not disabled within the meaning of the Act. Tr. 25.

## RECOMMENDATION

Based on the foregoing, the Commissioner's final decision should be AFFIRMED.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this _17__ day of June, 2005.


_____/s/_____
John P. Cooney
United States Magistrate Judge